UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Horrow<br>Russell Petti | Daniel Maguire |

**Proceedings:**     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 20, filed December 8, 2014)

## I.    INTRODUCTION

On December 4, 2013, plaintiff Julie Marshburn, M.D., filed this lawsuit against defendant Unum Life Insurance Company of America ("Unum") and Does 1 through 10. On January 10, 2014, Unum removed the action to this Court on the basis of diversity and federal question jurisdiction. Dkt. Nos. 1, 8. In brief, the complaint alleges that Unum failed to make disability payments owed to plaintiff under the terms of an insurance policy issued by Unum, having improperly determined that plaintiff was not disabled. See generally Compl. (attached to Dkt. No. 8). Plaintiff brings claims for breach of contract and breach of the duty of good faith and fair dealing. Id.

On December 8, 2014, Unum filed the instant motion, seeking summary judgment on the ground that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), governs plaintiff's claims for long-term disability benefits and completely preempts plaintiff's asserted state law claims. Dkt. No. 20. Plaintiff filed an opposition on December 15, 2014. Dkt. No. 21. Unum filed a reply on December 22, 2015. Dkt. No. 23. On January 5, 2015, the Court held a hearing on the matter. For the reasons that follow, the Court concludes that ERISA governs the ineligibility defense raised by Unum, but that Unum has not shown that it is entitled to summary judgment on the basis of ERISA preemption of plaintiff's state-law claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

## II.   FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in material dispute for purposes of this motion.

### A.   Unum's Relevant Insurance Policies

In 2003, plaintiff was admitted to an Internal Medicine residency program at Cedars-Sinai Medical Center in Los Angeles, California ("Cedars-Sinai"). Def.'s Separate Statement ("DSS") ¶ 12; Pl.'s Response to Def.'s Separate Statement ("PRS") ¶ 12. At all times relevant to this motion, Cedars-Sinai maintained an employee welfare benefit plan (the "Plan") for its eligible employees. DSS ¶ 1; PRS ¶ 1. Effective February 1, 1997, Unum issued Group Long Term Disability Policy No. 510733001 (the "Group Policy"), which funded in part the Plan's long-term disability insurance coverage. DSS ¶ 2; PRS ¶ 2. As a resident at Cedars-Sinai, plaintiff was eligible to participate in the Plan and for disability coverage under the Group Policy. DSS ¶ 13; PRS ¶ 13. For purposes of short-term disability, the Group Policy defines "disability" as when, "due to your sickness or injury . . . you are unable to perform the material and substantial[1] duties of your regular occupation;[2] and [] you are not working in any occupation." DSS ¶ 3; PRS ¶ 3. For purposes of long-term disability, the Group Policy defines "disability" as

---

[1]The Group Policy defines "material and substantial duties" as "duties that . . . are normally required for the performance of your regular occupation; and [] cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week." DSS ¶ 6; PRS ¶ 6.

[2]The Group Policy defines "regular occupation" as follows: "the occupation you are routinely performing when your disability begins." DSS ¶ 7; PRS ¶ 7. The Group Policy states that "Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at least a specific location." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

when "you are limited[3] from performing the material and substantial duties of your regular occupation due to your sickness and injury; and [] you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."  DSS ¶ 4; PRS ¶ 4.

The Group Policy had a "conversion" feature that allowed an employee whose employment was terminated to retain insurance coverage as an individual.[4]  This provision reads:

> If you end employment with your Employer, your coverage under the plan will end.  You may be eligible to purchase insurance under Unum's group conversion policy.  To be eligible, you must have been insured under your Employer's group plan for at least 12 consecutive months. . . . You must apply for insurance under the conversion policy and pay the first quarterly premium within 31 days after the date your employment ends.  Unum will determine the coverage you will have under the conversion policy.  The conversion policy may not be the same coverage [Unum] offered you under your Employer's group plan.

DSS ¶ 8; PRS ¶ 8.  The Group Policy explains that a person is "not eligible to apply for coverage under Unum's group conversion policy if," among other things, the person is "disabled under the terms of the plan," "recover[s] from a disability and do[es] not return to work for [the prior] Employer," or is "on a leave of absence."  DSS ¶ 9; PRS ¶ 9.

---

[3]The Group Policy defines "limited" as "what you cannot or are unable to do."  DSS ¶ 5; PRS ¶ 5.

[4]As used in this order, "conversion policy" means "a private (non-employer-financed) insurance policy obtained by a former employee, after termination."  Demars v. CIGNA Corp., 173 F.3d 443, 445 n.1 (1st Cir. 1999).  A "conversion right" is the "option to convert from employer-sponsored coverage to a private insurance policy."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

### B.    Plaintiff's Injuries and Medical Treatment

In August 2003, while working at Cedars-Sinai, plaintiff injured her right shoulder lifting a patient.  DSS ¶ 15; PRS ¶ 15.  Although plaintiff initially expected the injury to heal on its own, it did not.  See Dkt. No. 22-2 (Marshburn Decl.) ¶¶ 5, 6.  In the spring of 2006, plaintiff took off the last month of her residency as a "reading month" to prepare for a board examination and have surgery on the injured shoulder.  Id. ¶ 7.  On June 5, 2006, Dr. Neal S. El-Attrache performed surgery on plaintiff's right shoulder to repair a labrum tear.  DSS ¶ 16; PRS ¶ 16.  During this surgery, plaintiff suffered a torn ligament in her right thumb.  DSS ¶ 19; PRS ¶ 19.  Plaintiff asserts that she was placed on restricted duty as a result of the surgery, but that the restriction did not have an immediate impact on her work duties because she was studying for boards at the time.  Marshburn Decl. ¶ 8.  In March 2007, plaintiff had surgery on her right thumb, as well as a second surgery on her right shoulder to clean up scar tissue.  DSS ¶ 21; PRS ¶ 21.  Plaintiff then tore ligaments in her right finger while rehabilitating her shoulder in May 2007.  DSS ¶ 22; PRS ¶ 22.

Plaintiff did not return to work until March 2008.  DSS ¶ 18; PRS ¶ 18.  According to plaintiff, she was unable to work until this time because of "a number of factors, including the need for additional surgeries and some medical issues which were both related and unrelated" to her first shoulder surgery.  PRS ¶ 18.

### C.    Plaintiff's Conversion Policy

Plaintiff's employment at Cedars-Sinai terminated on June 30, 2006.  DSS ¶ 24; PRS ¶ 24.  Cedars-Sinai subsequently sent plaintiff a document notifying her of the opportunity to convert her Unum life and disability insurance coverage into an individual policy no longer affiliated with Cedars-Sinai, along with an application for conversion coverage.  DSS ¶ 25; PRS ¶ 25; see Marshburn Decl. ¶ 14 & Ex. A.  This notice was dated July 7, 2006, but plaintiff recalls receiving the document "much later in July."[5]

---

[5]Plaintiff declares that she does not recall seeing or reading an accompanying document called "Group LTD Conversion Facts."  Marshburn Decl. ¶ 13.  For this and other reasons, plaintiff objects to this document, submitted by Unum as Exhibit 5 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

Marshburn Decl. ¶¶ 9, 10.  Plaintiff avers that the only requirement on the notification was that the application be submitted within 31 days of her termination.  Id. ¶ 12.

On August 11, 2006, plaintiff and her husband completed an application for long term disability insurance and submitted it to Unum along with a premium check.  DSS ¶ 27; PRS ¶ 27.  This application states, "**If you are currently disabled under the terms of your group policy, you should apply for disability benefits not conversion**."  DSS ¶ 28; PRS ¶ 28 (emphasis in original).  Plaintiff declares that at that point, she "had not had an opportunity to read Unum's group disability policy closely," and was "unaware that there were any health restrictions on [her] right to convert that group coverage to individual coverage."  Marshburn Decl. ¶ 15.  Plaintiff asserts that she never saw a copy of the Group Policy "until litigation commenced in this case."  Id. ¶ 28.  Plaintiff also avers that in August 2006, she "had no idea that [her] recovery would be so long and difficult."  Id. ¶ 16.  Plaintiff states that at the time, she was preparing to take her board examinations, and anticipated that she would recover from her surgery and begin practicing medicine.  Id.  Plaintiff denies that she saw herself as "someone who was suffering from a long term disability" at the time she submitted the conversion application.  Id.  She also asserts that, when she applied for conversion coverage, she did not believe that she would be disabled for long enough to qualify for coverage under the Group Policy, and erroneously believed that the Group Policy did not cover disability from her specific occupation, as opposed to "any occupation."  Id. ¶¶ 17, 18.

Unum initially denied plaintiff conversion coverage, notifying plaintiff through an August 28, 2006 letter that her application was rejected because it was received beyond the 31-day conversion period.  DSS ¶¶ 31–32; PRS ¶¶ 31–32.  On September 6, 2006, plaintiff called Unum to explain that her application was late because she did not receive the conversion notification from Cedars-Sinai in a timely manner.  DSS ¶ 33; PRS ¶ 33.  At Unum's direction, plaintiff resubmitted her application along with a letter from a Cedars-Sinai representative confirming that Cedars-Sinai had failed to timely mail the conversion information.  DSS ¶¶ 34–36; PRS ¶¶ 34-36.  Unum subsequently processed and approved plaintiff's application, issuing her a long-term disability conversion

Sherene King's declaration.  See Dkt. No. 22-5 (Objections to Evidence).  The Court need not rule on these objections because it does not rely on the objected-to evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

certificate under Plan No. 152761-001 BL0102825 (the "Conversion Policy"). DSS ¶¶ 38–41; PRS ¶¶ 38–41. The effective date of the Conversion Policy was June 30, 2006. <u>See</u> Marshburn Decl. ¶¶ 22, 23; King Decl. Exs. 2, 8.

Under the Conversion Policy, an insured must "meet the definition of 'participant' " to be eligible for coverage. DSS ¶ 42; PRS ¶ 42. The Conversion Policy defines "participant" as a "person who is eligible for long term disability conversion coverage according to the terms and provisions of the former plan." DSS ¶ 43; PRS ¶ 43. Plaintiff declares that, during the conversion process, no one at Unum ever asked her whether she was disabled or had been consulting with a physician or undergoing treatment; indeed, plaintiff asserts that no one from Unum ever asked her "anything about [her] health at all." Marshburn Decl. ¶ 24.

In January 2011, plaintiff submitted a disability claim under the Conversion Policy, stating that she was unable to work as of February 27, 2009, and that her last date of work was April 14, 2009. DSS ¶ 44; PRS ¶ 44. Unum approved the claim on or around June 20, 2011, but noted that plaintiff's medical status and prognosis were unclear after October 2010. DSS ¶¶ 45, 46; PRS ¶¶ 45, 46. On June 1, 2012, a Unum representative sent plaintiff a letter advising her of Unum's decision to deny her disability claim. DSS ¶ 47; PRS ¶ 47. Plaintiff submitted an appeal supported by additional records on November 26, 2012, which was rejected on April 16, 2013. DSS ¶¶ 48–49; PRS ¶ 48–49. Unum advised plaintiff in a letter dated November 7, 2013, that no further review of her claim was available. DSS ¶ 50; PRS ¶ 50.

Plaintiff never filed a disability claim under the Group Policy. DSS ¶ 14; PRS ¶ 14. Plaintiff alleges that Unum breached its Conversion Policy contract with plaintiff, as well as the duty of good faith and fair dealing, by, among other things, failing to make, withholding, or delaying payments to plaintiff knowing that she was entitled to the same, misrepresenting pertinent facts and policy provisions, and failing to investigate plaintiff's claim or reasonably explain its denial thereof. <u>See</u> Compl. at 5–6. Unum represents that it does not seek repayment of benefits already paid under the Conversion Policy, and will return all premiums paid under that policy. Dkt. No. 20 at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| **CIVIL MINUTES - GENERAL** | | | **'O'** |
|---|---|---|---|
| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|----------|------------------------------|------|-----------------|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

## IV.   ANALYSIS

The parties agree that ERISA governs the Group Policy (PRS ¶ 10), but disagree on ERISA's applicability to the instant dispute.  Unum argues that plaintiff's state law claims are completely preempted by ERISA because plaintiff was ineligible under the Group Policy to apply for the Conversion Policy, and can only recover disability benefits—if at all—under the Group Policy.  Plaintiff argues that state law governs her claims under the Conversion Policy, and that Unum is attempting to rescind that policy in violation of state law.

### A.      Background on ERISA Preemption

ERISA broadly preempts state law concerning "employee benefit plans," but not all "employee benefits."  <u>Fort Halifax Packing Co., Inc. v. Coyne</u>, 482 U.S. 7, 7–8 (1987).  "Employee benefit plan" is defined to include "employee welfare benefit plan," which means:

> (1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to the participants or their beneficiaries.

<u>Kanne v. Conn. Gen. Life Ins. Co.</u>, 867 F.2d 489, 491–92 (9th Cir. 1988), <u>cert. denied</u>, 492 U.S. 906 (1989) (internal quotation marks omitted; paragraph structure altered) (quoting <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc)); <u>see also</u> 29 U.S.C. § 1002(1) (defining employee welfare benefit plan).  ERISA preemption is designed to further the statute's purpose of "provid[ing] a uniform regulatory regime over employee benefit plans" and making employee benefit plan regulation "exclusively a federal concern."  <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004) (citing <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 (1981)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

"There are two strands of ERISA preemption: (1) 'express preemption' under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in ERISA § 502(a), 29 U.S.C. § 1132(a)." Fossen v. Blue Cross & Blue Shield of Mon., Inc., 660 F.3d 1102, 1107 (9th Cir. 2011) (further quotation marks and brackets omitted) (quoting Paulsen v. CNF Inc., 559 F.3d 1061, 1081 (9th Cir. 2009)). Section 514(a) provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Section 502(a) permits an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This enforcement mechanism "creates an exclusive remedial scheme" which does not "permit state law claims in addition to the claims actionable under ERISA." Lea v. Republic Airlines, Inc., 903 F.2d 624, 631 (9th Cir. 1990). "Claims relating to ERISA plans must therefore invoke the specific remedies of ERISA." Id. at 632.

Pursuant to these provisions, "ERISA preempts state law tort and contract actions for improper processing of a claim for benefits under an insured employee benefit plan." Johnson v. District 2 Marine Eng'r Beneficial Ass'n, 857 F.2d 514, 517 (9th Cir. 1988). This preemption includes actions for breach of contract and for breach of the duty of good faith and fair dealing. Id. Both branches of ERISA preemption "defeat state-law causes of action on the merits." Fossen, 660 F.3d at 1107. Morever, where ERISA governs, a plaintiff may not pursue "extra-contractual damages caused by improper processing of benefit claims," such as punitive damages. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985); Johnson, 857 F.2d at 518. And because ERISA remedies are considered equitable in nature, a beneficiary or participant generally has no constitutional right to a jury trial. See Thomas v. Oregon Fruit Prods. Co., 228 F.3d 991, 997 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|----------|------------------------------|------|-----------------|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

"ERISA preemption is a question of law."[6]  Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 874 (9th Cir. 2001).  In determining whether state law is completely preempted, courts focus on whether a law has "(1) a 'reference to' or (2) a 'connection with' an ERISA plan."  BankAmerica Pension Plan v. McMath, 206 F.3d 821, 829 (9th Cir.2000) (citing Cal. Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc., 519 U.S. 316, 324 (1997)).  To determine whether the requisite relation between the state law claim and an employee benefit plan exists, the court must look "to both the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive and the nature of the effect of the state law on ERISA plans."  McMath, 206 F.3d at 829.  Because ERISA preemption is an affirmative defense, the burden is on the defendant to establish it.  Kanne, 867 F.2d at 492 n.4.

### B.      The Distinction Between Conversion Rights and Conversion Policies

In the Ninth Circuit, ERISA governs the right to convert an ERISA-governed policy to an individual conversion policy, but not conversion policies themselves.  In the case that clarified this rule, claimant Waks obtained medical insurance through an ERISA plan offered by her husband's employer, then applied for and received individual coverage pursuant to the group policy's conversion rights when her husband's employer ceased operations.  Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 874 (9th Cir. 2001).  When the insurer denied her claims for emergency hospital costs, Waks sued for breach of contract, among other state law claims.  Id.  The district court accepted the insurer's argument that ERISA preempted these claims, but the Ninth Circuit reversed, holding that "state-law claims arising under a converted policy—even though the policy has been converted from an ERISA plan—are not preempted by ERISA."  Id. at 877. First, the appellate court explained that the conversion policy was not itself an ERISA plan because it was issued to an individual non-employee.  Id. at 875.  The court then determined that the state law claims were not "so related to an ERISA plan that they are

---

[6]The "*existence* of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person."  Kanne, 867 F.2d at 492 (emphasis added).  In this case, however, the parties do not dispute that the Group Policy is governed by ERISA, but that individual conversion policies derived therefrom are not.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

preempted" because individual policies do not implicate ERISA preemption's policy rationales of "protection of employee interests, and administrative ease for employers." Id. However, the Ninth Circuit stated that "rights under an ERISA plan and *rights relevant to the process of converting from an ERISA plan are preempted* by ERISA." Id. at 877 (emphasis added). This distinction between "the right to convert from an ERISA plan to a converted policy, which is covered by ERISA, and the converted policy itself, which is not," id. at 877, has been adopted by several other courts.[7] Thus, whether ERISA preempts plaintiff's claims turns on whether her claims concern conversion rights under the ERISA-governed Group Policy.

In the first of two cases Unum cites to support its contention that this is a conversion rights case, the plaintiff was covered by his employer's group insurance policy when he became disabled. White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 27 (4th Cir. 1997). Approximately three years after he became entitled to disability benefits under the group policy, he applied for an individual conversion policy, which the insurer mistakenly issued even though the ERISA plan stated that a beneficiary could claim coverage under either the group policy or a conversion policy, but not both, and could not recover under the conversion policy if any amount was paid under the group policy. Id. While maintaining group policy coverage, the plaintiff paid conversion policy premiums for four years before the insurer discovered the mistake and notified the plaintiff that he could not maintain coverage under both policies. Id. The plaintiff filed a lawsuit seeking a declaration that he was entitled to coverage under both policies. Id.

---

[7] See, e.g., Demars v. CIGNA Corp., 173 F.3d 443, 448–50 (1st Cir. 1999) (drawing a "careful distinction between conversion rights and conversion policies"); Mimbs v. Commercial Life Ins. Co., 818 F. Supp. 1556, 1560–61 (S.D. Ga. 1993) (holding that claims that an insurer failed to offer proper conversion plan options are preempted, but claims arising from obligations incurred under a conversion policy are not); see also Vaughn v. Owen Steel Co., Inc., 871 F. Supp. 247, 249 (D.S.C. 1994) (adopting the reasoning of Mimbs). Additionally, two circuits have decided that ERISA preempts state law claims related to conversion rights, without deciding whether ERISA also applies to conversion policies themselves. See White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 28 (4th Cir. 1997); Howard v. Gleason Corp., 901 F.2d 1154, 1157–59 (2d Cir.1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                     **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

Affirming the district court's grant of summary judgment to the insurer, the Fourth Circuit reasoned that because the claims "clearly related to the conditions placed by the group policy on the right of conversion," they "must be governed by ERISA." Id. at 28; see also id. ("The written terms of this ERISA plan plainly prohibit simultaneous recovery under the group policy and a conversion policy, and ERISA demands adherence to the clear language of this employee benefit plan."). Moreover, the insurer's acceptance of conversion policy premiums for four years did not effect a waiver under either state law, which was preempted, or ERISA federal common law, which does not incorporate the principles of waiver and estoppel. Id. at 29.[8]

In the second of Unum's cited cases, the plaintiff was on sick leave from his employer when he was terminated for non-medical reasons. Pergosky v. Life Ins. Co. of N. Am., No. CIV.A. 01-4059, 2003 WL 1544582, at *1 (E.D. Pa. Mar. 24, 2003). The employer sent Pergosky a "Notice of Conversion Privilege" for long-term disability insurance, along with an application for such coverage and instructions including: "You are not eligible if you retire, are age 70 or more, are *disabled*, or if your employer's policy is terminated." Id. (internal quotation marks omitted; emphasis in original). Pergosky completed the application, his former employer certified that he was not disabled under the terms of the ERISA plan when terminated, and the insurer issued the conversion policy. Id. at *2. Pergosky later submitted a claim under the conversion policy based on severe migraines, but the insurer filed and paid the claim under the group policy because the claim's disability date predated the conversion policy. Id. Pergosky paid conversion policy premiums for several years and eventually submitted a claim arising from a stroke postdating the conversion. Id. When the insurer denied this claim, Pergosky sued for breach of contract, and the insurer defended on the basis of ERISA preemption. Id.

---

[8]The Court notes that White was a clearer case because the plaintiff affirmatively sought a declaration that he could validly hold both an ERISA-governed policy and a conversion policy. Here, plaintiff asserts rights only under the Conversion Policy, after denial of a disability claim on non-ERISA grounds, and Unum has raised ineligibility to convert under the Group Policy as an affirmative defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                            **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

Relying largely on <u>White</u>, the court determined that Pergosky's claims related to "conversion rights, not conversion benefits," and were therefore preempted.  <u>Id.</u> at *5.  Reasoning that the ERISA-governed group plan conditioned conversion rights on (1) not being disabled at the time of application and (2) not holding group and individual policies simultaneously, the court concluded that the claim "is related to conditions placed by the group Plan on the right of conversion, and thus is covered by ERISA." <u>Id.</u> at *6.  The court noted that Pergosky did not dispute that he "should not have been entitled to purchase and pay for an Individual Conversion Plan," and that he was disabled at the time he obtained the conversion policy.[9]  And because the "unambiguous terms of the Plan clearly exclude[d] disabled participants from being eligible to convert the insurance policy," the court concluded that the "decision to deny Plaintiff's claim for benefits, for which Plaintiff was not eligible, was legally correct." <u>Id.</u> at *9.  The court also determined that although the defendants had accepted Pergosky's premium payments for over a decade, waiver did not preclude them from raising ineligibility to convert because "[t]he ERISA group Plan clearly states that an applicant with a disability is ineligible for conversion coverage" and applying waiver would "rewrite" the ERISA plan by extending coverage beyond its express provisions.  <u>Id.</u> at *6–7.  Finally, the court rejected an argument that incontestability law prevented defendants from contesting Pergosky's coverage under the policy, determining that even if such a clause were deemed to exist, it would not preclude invocation of "the plain terms of the ERISA plan," which excluded already disabled persons from conversion  coverage.  <u>Id.</u> at *9.

---

[9]Specifically, Pergosky "state[d] that it [was] 'undisputed that [he] should not have ended up with both policies' " and cited for this proposition to a stipulated fact that "recite[d] the relevant provision in the Notice of Conversion Privilege: You are not eligible if you retire, are age 70 or more, or are disabled." 2003 WL 1544582, at *6.  Because Pergosky was in his mid-fifties at the time of conversion, the court appears to have deemed this a stipulated admission that Pergosky was disabled, and thus ineligible to convert, at the time the conversion policy was issued.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

The Court notes that in both <u>White</u> and <u>Pergosky</u>, there was no dispute that the plan participant was ineligible for the conversion policy.[10]  Following these cases and other persuasive authorities, Unum is entitled to summary judgment on the basis of ERISA preemption *if* the Group Policy's conversion conditions indisputably barred plaintiff from obtaining conversion coverage when she applied.  <u>See also</u> <u>Stocks v. Life Ins. Co. of N. Am.</u>, No. 11-C-00581, 2013 WL 1966921 (E.D. Wis. May 9, 2013) (Insurer argued conversion policy was mistakenly issued and the case therefore involved conversion rights; court denied as "premature" motion for ERISA applicability because there was a "dispute regarding whether or not there was a converted policy."); <u>Sankey v. Metro. Life Ins. Co.</u>, No. 12-1135, 2012 WL 2338964 (E.D. La. June 19, 2012) (holding insurer's defense that a conversion policy was mistakenly issued under ERISA plan presented a federal question, and rejecting plaintiff's argument that no right-to-convert issue was raised because insurer actually permitted conversion and accepted premiums for the individual policy); <u>Gabner v. Metro Life Ins. Co.</u>, 938 F. Supp. 1295, 1302 (E.D. Tex. 1996) ("[T]here is widespread unanimity that claims arising from the right to convert (e.g., 'issues concerning the availability of a conversion policy . . .') are preempted by ERISA." (citation omitted)); <u>Mays v. Unum Life Ins. Co. Of Am.</u>, 95 C 1168, 1995 WL 317102, at *4 (N.D. Ill. May 23, 1995) ("[The beneficiary] sues for the death benefit allegedly due under the conversion policy.  An element of this claim is that [the beneficiary's sister] made a valid and enforceable contract . . . . Whether [the] contract is valid and enforceable must be determined with reference to [the] conversion right, which established the terms of the contract.");[11] <u>Vaughn v. Owen Steel Co.</u>, 871 F.

---

[10]Both <u>White</u>, 114 F.3d at 28, and <u>Pergosky</u>, 2003 WL 1544582, at *5, noted the circuit split as to whether converted policies themselves are governed by ERISA, but declined to decide that issue because they found that ERISA governed even under the rule that conversion rights but not conversion policies are ERISA-governed.  Therefore, both cases are consonant with the Ninth Circuit's holding in <u>Waks</u>.

[11]The <u>Mays</u> court is among those that, unlike the Ninth Circuit, have decided that conversion policies are themselves governed by ERISA.  But in the language cited above, the court reasoned that even if it were to adopt the conversion rights/policy distinction, plaintiff's claims would be preempted because the plaintiff's claim would "involve [the policyholder's] conversion 'right.' "  1995 WL 317102, at *4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

Supp. 247 (D.S.C. 1994) (denying as premature insurer's motion to transfer case to non-jury roster because although "issues concerning the availability of a conversion policy . . . are all preempted by ERISA," plaintiff would be entitled to litigate state law claims for breach if a valid conversion policy was found to exist). In short, Unum raises a preemption "defense . . . governed by ERISA, Stocks, 2013 WL 1966921, at *3, but if a triable issue exists as to the applicability of that defense, dismissal of plaintiff's state law claims on summary judgment would be improper.

## C.    Application to Plaintiff's Case

Under ERISA, "[t]he written terms of plan the plan documents control." In re Unisys Corp. Retiree Md. Ben. ERISA Litig., 58 F.3d 896, 902 (3d Cir. 1995). Unum argues that the undisputed facts show plaintiff was ineligible for conversion coverage because the Group Policy disallows conversion if an applicant (1) is "disabled under the terms of the plan, (2) "recover[s] from disability and do[es] not return to work for [the] Employer," or (3) is "on a leave of absence." On the first ground, the Group Policy defines "disability" for short-term disability purposes as when, "due to your sickness or injury . . . you are unable to perform the material and substantial duties of your regular occupation; and [] you are not working in any occupation." For purposes of long-term disability, the Group Policy defines "disability" as when "you are limited from performing the material and substantial duties of your regular occupation due to your sickness and injury; and [] you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."

Unum reasons that it is undisputed that when she applied for coverage, plaintiff had stopped working at Cedars-Sinai to have shoulder surgery on June 5, 2006, during which she sustained an additional injury to her right thumb, and that plaintiff did not return to work until March 2008. Unum also points to its notes on plaintiff's disability claim, indicating that plaintiff stated in a March 16, 2011 telephone call, "I was on disability in 2006 when I had my first shoulder surgery." DSS ¶ 17; PRS ¶ 17; King Decl. Ex. 10 at 117. Unum concludes from these facts that plaintiff has admitted that she was "disabled from June 30, 2006 through August 1, 2006," and therefore not eligible to convert her coverage. Dkt. No. 20 at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|----------|------------------------------|------|-----------------|
| Title    | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

Plaintiff disputes Unum's contention that she was "disabled in June of 2006" and should have "file[d] a disability claim under the Group LTD Policy instead of converting that coverage to individual coverage." Dkt. No. 22. Plaintiff declares that in August 2006, when she applied for conversion coverage, she expected to recover and return to work "well before" she would be eligible for disability benefits. Marshburn Decl. ¶¶ 16–17; see id. ¶ 16 ("At the time I did the conversion I certainly did not see myself as someone who was suffering from a long term disability."). Plaintiff explains that Dr. El Attrache told her that the surgery "had gone well." Id. ¶ 8. Plaintiff asserts that although she was placed on restricted duty as a result of the surgery, the restriction did not have an immediate impact on her work duties because she was studying for boards at the time. Id. Plaintiff states that her inability to work until March 2008 was caused by "a number of factors, including the need for additional surgeries and some medical issues which were both related and unrelated" to her first surgery. PRS ¶ 18.

The Court finds that plaintiff has raised a genuine issue of material fact as to whether she was disabled under the terms of the Group Policy when she applied for and received conversion coverage. Although plaintiff's June 2006 surgery and related complications were clearly substantial factors in her eventual disability, it is unclear when exactly she became disabled. Plaintiff submits evidence that immediately following her June 2006 surgery, she expected to recover and to begin practicing without medical interruption after taking her boards, and that factors unrelated to her first surgery contributed to her inability to return to work until March 2008. And even assuming the accuracy of Unum's claim notes reflecting that plaintiff indicated she was "on disability in 2006 when [she] had [her] first shoulder surgery," that statement could be parsed as consistent with plaintiff becoming disabled later in 2006, after the Conversion Policy was issued, rather than between June 30 and August 1, 2006, as Unum asserts. Viewing the evidence and reasonable inferences to be drawn therefrom in the light most favorable to plaintiff as the Court must on this motion, a factfinder could determine that plaintiff did not become disabled until sometime after she applied for individual coverage.

Unum also argues that plaintiff was precluded from conversion coverage under the second provision cited above because to the extent she recovered from her disability, she did not return to work for Cedars-Sinai. This ground for ineligibility is derivative of the first, since it would have no applicability if plaintiff were not disabled at the time of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

conversion.  Therefore, for the reasons stated above, Unum has not shown that is entitled to summary judgment on this issue.

Finally, Unum argues that plaintiff was on a leave of absence when she stopped working at Cedars-Sinai because she had taken the last month of her residency off to have surgery and prepare for her boards.  But Unum does not point to an operative definition of "leave of absence," and plaintiff declares that "[u]nder the terms of the residency, [she] was entitled to take the last month of the residency as a 'reading month' to prepare for [her] board exam."  Marshburn Decl. ¶ 7.  Cedars-Sinai was presumably aware of this reading month when it sent plaintiff her notice of conversion rights, and neither Cedars-Sinai nor Unum indicated that the reading month was disqualifying at the time.  Accordingly, Unum has not met its burden of showing that this "leave of absence" provision, or plaintiff's alleged disability, indisputably made plaintiff ineligible for the Conversion Policy when she applied for it.

Unum is correct that ERISA governs whether plaintiff was eligible for the Conversion Policy, but this case is not quite on all fours with White or Pergosky, where the plaintiffs conceded that they were ineligible for the conversion policy.  Rather, this case shares the key element of a disputed conversion policy with Vaughn, where the plaintiff contended that she had validly contracted for an individual conversion policy, and the insurer denied that such an individual contract was ever formed.  The Vaughn court explained that "issues concerning the availability of a conversion policy . . . or the formation of an individual contract of insurance, are all preempted by ERISA," and found that a bench trial would be necessary to determine whether conversion rights were validly exercised, but that the plaintiff's state-law breach of contract claim under the conversion policy should proceed to a jury if such a policy was found to exist.  871 F. Supp. at 249; see also Wright v. Anthem Life Ins. Co. Of Ind., No. 399CV33-P-A, 2000 WL 870807, at *9 (N.D. Miss. 2000) (deciding that ERISA governed whether plaintiff had valid conversion coverage, but that "[s]hould the Court find in plaintiff's favor as to the formation of a contract for conversion coverage . . . plaintiff will be entitled to a jury trial on the alleged breach of said contract").  Here, ERISA will not preempt plaintiff's state-law claims if plaintiff was in fact eligible to receive the Conversion Policy, see Waks, 263 F.3d at 875–77, and Unum has not shown as a matter of law she was not.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

**D.      Issues Raised in Plaintiff's Sur-Reply**

Less than a week before the hearing on this motion, plaintiff requested leave to file a proposed sur-reply, and Unum filed and requested consideration of a response to that proposed sur-reply. Dkt. Nos. 24, 26. The Court rejected these filings, and informed the parties that they could raise the arguments therein at oral argument. See Dkt. Nos. 27, 28. As noted above, the Court concludes without considering the issues raised by plaintiff's sur-reply that Unum is not entitled to summary judgment on the existing record. However, in the interests of streamlining future proceedings, the Court addresses additional arguments raised in the sur-reply and at the hearing.

1.      Rescission

Plaintiff argues that Unum's defense that plaintiff was ineligible for the Conversion Policy is barred because it does not meet the standards for rescinding a contract under California law or federal common law developed under ERISA.[12] This argument fails because the state law on which plaintiff relies is preempted by ERISA and the federal law that plaintiff cites is inapposite to the conversion rights context.

ERISA includes a "savings clause" that precludes from ERISA preemption a limited class of state laws specifically regulating the insurance industry. See 29 U.S.C. § 1144(b)(2)(A) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."). To qualify under this provision, a state law must (1)

---

[12]In her opposition, plaintiff anticipated that Unum would raise a choice-of-law provision in the Group Policy that suggests Maine law, not California, might govern if any state law is relevant. Plaintiff argues that the choice-of-law provision should not be enforced because plaintiff was never provided with a copy of the contract containing it. Because Unum did not assert this choice-of-law argument, the Court does not address Maine law for purposes of this order. The Court notes however, that since plaintiff argues that Maine has a similar insurance rescission standard, the analysis under Maine law would likely be similar to the rescission-related discussion herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

 "be specifically directed toward entities engaged in insurance" and (2) "substantially affect the risk pooling arrangement between the insurer and the insured." Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341–42 (2003).  Plaintiff argues that Unum is attempting to rescind her policy without complying with the requirements for rescission under (1) general California contract law and (2) California insurance law. Section 1144(b)(2)(A) is obviously inapplicable as to general contract law, which is not "specifically directed toward entities engaged in insurance."  Id.; see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50 (1987) ("[I]n order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.").  Moreover, the Ninth Circuit has explicitly held that plaintiff's cited California Insurance Code section 359, which applies a rescission standard requiring a material misrepresentation to insurance contracts, is preempted by ERISA notwithstanding the savings clause.  Sec. Life Ins. Co. of Am. v. Meyling, 146 F.3d 1184, 1188–90 (9th Cir. 1998);[13] see also Pilot Life, 481 U.S. at 50 (explaining that even laws

_____

[13]Plaintiff argues that "Meyling's holding that California law regarding rescission of insurance policies is preempted by ERISA has been significantly undermined" by the Supreme Court's decision in Miller, which altered the test for whether the ERISA savings clause applies.  This argument is unpersuasive.  The Meyling court determined that the savings clause did not apply to section 359 and two other statutes because "[a]lthough the provisions are found in the Insurance Code, they do little more than codify long-standing principles of California contract law."  146 F.3d at 1189; see id. at 1189–90 ("California . . . has merely codified a particular application of rescission law which is deeply rooted in the common law of contract remedies.").  In other words, the finding that the savings clause did not apply to section 359 is consonant with the first prong of the Miller test, because the court determined that the provision is not "specifically directed toward entities engaged in insurance."  Miller, 538 U.S. at 341.  The court also suggested that section 359 would fail the second prong of Miller: "The existence of the rescission remedy does not spread risk or affect the insurance policy relationship except to the extent that rescission could have those effects upon any contractual relationship." Meyling, 146 F.3d at 1190.  Because plaintiff cites no case that has ever found this part of Meyling to be overruled or abrogated, and because the Court finds nothing in Miller that undermines its reasoning, the Court rejects plaintiff's invitation to ignore the case's directly on-point holding.  Furthermore, for the same reasons that the federal common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

identified with the insurance industry, but "firmly planted in the general principles of [state] tort and contract law," do not fall under the savings clause).

Next, plaintiff argues that even if ERISA governs whether a valid Conversion Policy exists, a federal common law rescission standard applies rather than the plain terms of the Group Policy. Plaintiff relies on Meyling, in which the insurer sought to rescind an ERISA-governed insurance contract due to material misrepresentations in the insurance application. 146 F.3d at 1186. The policy allowed for premiums to be retroactively adjusted, but did not provide for any other remedy for misrepresentations, such as rescission or cancellation. Id. The Ninth Circuit nevertheless held that under federal common law principles, "ERISA must provide a rescission remedy when an insured makes material false representations regarding his health." Id. at 1191. The court explained that an insurance contract could be rescinded under ERISA for a "fraudulent" or "material" misrepresentation, with "material" defined as "affect[ing] insurability or the amount of premium paid." Id. at 1192. Plaintiff argues that Meyling shows that, even under ERISA, an insurer may rescind a conversion policy only where the insured obtained the policy through a material misstatement.

But neither Meyling nor any other case cited by plaintiff to support the applicability of a federal common law rescission standard involved conversion rights or a conversion policy. The Meyling court held that ERISA provides the right to rescind an insurance contract for a material misrepresentation, even where an insurance contract does not include a rescission provision. 146 F.3d at 1186, 1191–92. The court did not hold, as plaintiff seems to argue, that an insurer cannot enforce the plain terms of an ERISA plan regarding eligibility for conversion rights in the absence of a fraudulent or material misrepresentation. Nor did Meyling hold that ERISA rescission precludes other defenses an insurer might assert. Cf. DeCampos v. State Compensation Ins. Fund, 122 Cal. App. 2d 519, 529 (1954) (explaining that rights to rescind an insurance contract under California insurance law "are not in derogation of other remedial rights which are recognized and implemented by other provisions of law").

---

law of rescission does not apply, it does not seem that section 359 would apply even if it were not preempted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                 **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|----------|------------------------------|------|-----------------|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

More relevant than <u>Meyling</u> and similar cases are precedents involving a conversion policy and contested conversion rights. In such cases, "the insured obtained the individual policy only because of a conversion right provided under the group plan," which "allowed the insured to obtain the individual policy without evidence of insurability." <u>Gabner</u>, 938 F. Supp. at 1302. Accordingly, the insurer may argue that the insured's ineligibility for a mistakenly issued conversion policy (not a misrepresentation of insurability) prevents recovery under that conversion policy. In this context, the Court has found no case applying a rescission analysis, and several cases looking instead to the terms of the ERISA plan that provided the conversion right.[14] That is, courts have held that "[c]laims arising from the right to convert to an individual policy are grounded in ERISA and *are to be decided by reference to the terms of the ERISA plan*." <u>Wright</u>, 2000 WL 870807, at *7 (emphasis added). Here, because Unum relies on the eligibility terms of the ERISA-governed Group Policy rather than any alleged misrepresentation, the terms of the ERISA plan govern—not state or federal rescission law.

       2.       Incontestability

Next, plaintiff argues that Unum's defense of ineligibility is barred by California Insurance Code section 10350.2, which mandates that disability policies include a provision that after two years from the issuance of a policy, "no misstatements, except fraudulent misstatements, made by the applicant in the application for the policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of the two-year period." Cal. Ins. Code § 10350.2. It does not appear that any court has decided whether section 10350.2 falls under the ERISA savings clause. But this Court need not decide that question because, as explained above, Unum is not relying on an alleged misstatement to void the Conversion Policy or deny a claim under the Conversion Policy. Rather, Unum is raising the requirements for exercising the ERISA plan's right to conversion coverage.

Plaintiff cites no case applying an incontestability provision to defeat the eligibility terms of an ERISA plan's conversion rights. And in similar cases—where the insurer argued that a conversion policy was mistakenly issued to an ineligible plaintiff—courts

---

[14] See the discussion at pages 11–15, *supra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                'O'

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
|----------|------------------------------|------|-----------------|
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

have found incontestability clauses irrelevant.  For example, the <u>Pergosky</u> court concluded that "regardless of whether an incontestability clause exists or should be deemed to exist," where ERISA governs the group policy, an insurer is "entitled to assert" a "prohibition for [conversion] insurance coverage for disabled applicants."[15] 2003 WL 1544582, at *9; <u>see</u> <u>White</u>, 114 F.3d at 28–29 (holding that an incontestability clause did not prevent an insurer from invoking an ERISA plan's "plain terms" forbidding holding both a group and a conversion policy); <u>cf.</u> <u>Turner v. Safeco Life Ins. Co.</u>, 17 F.3d 141, 145–46 (6th Cir. 1994) (holding in a non-conversion policy ERISA case that an incontestability statute did not preclude an argument that the insured "never became eligible for coverage").  The <u>Pergosky</u> court found "the law regarding incontestability clauses" simply irrelevant because the ERISA plan, "from which the right to convert stem[med], clearly exclude[d] already disabled persons from eligibility for coverage."  2003 WL 1544582, at *9.  This case presents the same legal question, and the same governing law.[16]

---

[15]Plaintiff argues that <u>Pergosky</u> is unpersuasive because it did not consider the ERISA savings clause.  This is of no import because the <u>Pergosky</u> court did not find the incontestability clause unavailing because ERISA preempted it, but rather that "*even if such an incontestability clause existed or were deemed to exist*, it would not prevent Defendants from invoking the plain terms of the ERISA plan."  2003 WL 1544582 at *9.

[16]The cases cited by plaintiff in support of its argument that the incontestability provision falls under the ERISA savings clause do not mandate a different conclusion because, as explained above, the savings clause is irrelevant if the provision is simply inapplicable.  None of the incontestability clause cases cited in plaintiff's sur-reply involved a conversion .  Moreover, the only one of these cited cases to involve a question of eligibility actually supports the proposition that the incontestability clause advanced here does not apply.  In <u>Baseheart v. Life Ins. Co. of North America</u>, the district court determined that a similar incontestability clause fell under the ERISA savings clause. 960 F. Supp. 1210, 1212 (W.D. Ky. 1997).  The court nevertheless held, however, that the incontestability clause did "not prevent the insurer from denying Plaintiff's claim based on [the policyholder's] lack of eligibility."  <u>Id.</u> at 1213 (citing <u>Turner</u>, 17 F.3d at 145–46).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-cv-00242-CAS(PJWx) | Date | January 5, 2015 |
| Title | JULE MARSHBURN v. UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | | |

## V.    CONCLUSION

ERISA governs whether plaintiff was eligible for, and may sue under, the Conversion Policy.  But whether plaintiff was eligible for that policy presents triable issues of material fact.  Accordingly, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

|  | 00 | : | 20 |
| Initials of Preparer | | CMJ | |